[No. 2,478.]

## WILLIAM McKENZIE v. HARVEY DICKINSON.

Right of One Partner to Purchase Judgment Against Another.—
There is no principle of equity which forbids a partner from purchasing, with his own funds, and outside of the partnership business, a judgment, or other evidence of indebtedness against his copartner, or prohibits him from enforcing its collection by a levy upon, and sale of, the interest of the other in the firm assets.

Obligations of Partners "Inter Sese" Confined to Firm Business.—
The obligations of copartners inter sese, whatever may be their nature and extent, refer only to the conduct of the business in which the firm is engaged; beyond and outside of such business there is no restraint upon the right of either partner to traffic for his own profit.

Old Partner not Entitled to Account of Profits Since Dissolution.—Where McKenzie and Dickinson, bag manufacturers, dissolved partnership, leaving certain assets of the firm in McKenzie's hands, and afterwards McKenzie purchased, for much less than its face, a judgment against Dickinson, and had it levied upon Dickinson's interest in the

assets, and on the execution sale bought them in on his own account: *held*, that Dickinson was not entitled to an account of the profits made by McKenzie in the transaction, nor could he attack the sale made to McKenzie.

APPEAL from the District Court of the Twelfth Judicial District, City and County of San Francisco.

The facts are stated fully in the opinion.

The defendant appealed.

*G. F. & W. H. Sharp*, for Appellant.

McKenzie occupied the position of a surviving partner, and was a trustee to settle and liquidate the business of the firm. All the obligations and duties of that position were immediately imposed upon him, from which only a faithful performance of the trust can discharge him. (*Boyd* v. *Blankman*, 29 Cal. 19; *Smith* v. *Walker*, 38 Cal. 385; *Crawshay* v. *Collins*, 15 Vesey, 238; *Pond* v. *Ormsbee*, 2 Abbott [N. S.], 376; *Goodburn* v. *Stevens*, 5 Gill, 1; Parsons on Part. 441; *Ogden* v. *Astor*, 4 Sand. 349; *Case* v. *Abell*, 1 Paige, 398; *Walker* v. *House*, 4 Md. Ch. 39; *Hyde* v. *Easter*, id. 80.)

A trustee cannot speculate in or take advantage of his position; and if he does, and makes a profit, it belongs to his *céstui que trust*. (2 Story Eq., Secs. 1210, 1260; *Fawcett* v. *Whitehouse*, 1 Russ. & My. 132; *Giddings* v. *Eastman*, 5 Paige, 501.)

The report and judgment was founded upon the astonishing proposition that when a firm is dissolved, whether its affairs be settled or not, that instant its members become strangers; that all their duties and obligations to the firm and to each other cease; that they are at liberty to pirate upon each other, and to use any means to carry out their nefarious projects; and all this, notwithstanding it has been decided from time immemorial that the only effect of a dissolution, as in this case, is to revoke the agency of the

members to bind each other in new transactions, whilst in all other respects, and for all purposes, it is deemed to continue until its affairs are finally settled. (Story on Part. 375; Parsons on Part. 393; Collyer on Part. 324; Willard's Eq. 99; 3 Kent Com. 64; *Crawshay* v. *Collins,* 15 Vesey, 226; *King* v. *Smith,* 4 Car. & P. 108; *Bell* v. *Morrison,* 1 Peters, 351; *Murray* v. *Mumford,* 6 Cow. 441; *Combes* v. *Buswell,* 1 Dana, 475; *Peacock* v. *Peacock,* 16 Vesey, 57.)

Whether one partner can legally buy a judgment against another has no relevancy to the case. We are not seeking relief against the judgment, or claiming any interest in it. We are complaining of a sale of trust property; and it is immaterial whether it was sold under a judgment or by private agreement. The law had drawn around this property its sacred circle, and plaintiff could not enter it hostile to defendant, though armed with all the judgments in Christendom.

If a partner, placed in possession of firm property to settle its business, continues to carry on trade with that property, to the exclusion of the other, the latter is entitled to the same interest in the property and the profits so made as if the firm continued. (*Crawshay* v. *Collins,* 15 Vesey, 218; *Ex Parte Ruffin,* 6 Vesey, 128; *Featherstonaugh* v. *Fenwick,* 17 Vesey, 309; *Heartcote* v. *Holme,* id. 128; *Sigourney* v. *Munn,* 7 Conn. 20.)

The proposition that the sale and purchase by McKenzie of the firm property, under the Lane judgment, vested that property in him, is untenable. Such sale and purchase by him was nugatory and void. (*Boyd* v. *Blankman,* 29 Cal. 15; *Fox* v. *Macreath,* 1 Leading Cases in Eq. 297; *Webster* v. *King,* 33 Cal. 552; *Hardenberg* v. *Bacon,* id. 357; *Van Epps* v. *Van Epps,* 9 Paige, 237; *Devoue* v. *Fanning,* 2 John. C. 252; *Hawley* v. *Cramer,* 4 Cow. 717; *Iddings* v.

*Brien,* 4 Sand. Ch. 223; *Ex Parte Bennett,* 10 Vesey, 281; *Hawley* v. *Mancius,* 7 John. C. 174; *Van Horn* v. *Fonda,* 5 id. 468; *Green* v. *Winter,* 1 id. 36; *Chapin* v. *Weed,* Clarke's Ch. 464; *Wormley* v. *Wormley,* 8 Wh. 424; 2 Story Eq. Sec. 1259; *Taylor* v. *Plummer,* 3 M. & S. 574; *Trevelyan* v. *Charter,* 9 Beav. 140; *Crowe* v. *Ballard,* 3 Bro. C. C. 117; *Lees* v. *Nuttall,* 4 R. & My. 53; *Reed* v. *Norris,* 2 My. & Cr. 374; *Bentley* v. *Craven,* 18 Beav. 75–366.)

*Jabish Clement,* for Respondent.

McKenzie was not liable to account to Dickinson, as a partner, for anything after the dissolution. The terms of the dissolution vested the full title to the assets in McKenzie, and made him an ordinary debtor for any balance that might remain after paying himself. McKenzie was not to do anything with the money until the defendant should return, and then he was to pay it to him or his order. It was for McKenzie to collect the money, pay himself, divide the surplus into halves, appropriate one half to his own use, and retain the other subject to defendant's order. He had no partnership duty to perform concerning it. By the appropriation of McKenzie's half, Dickinson's half became due to him, not from the partnership, but from McKenzie; and Dickinson recognized that fact by drawing the order for two hundred dollars on McKenzie, instead of McKenzie & Co. (See *Weber* v. *Defer,* 8 How. Pr. 502; *Howe* v. *Lawrence,* 9 Cush. 553; *Dimond* v. *Hazard,* 32 N. Y. 65; *Gram* v. *Cadwell,* 5 Cow. 489.)

The partnership was absolutely dissolved, and the business closed; and the use of assets by either party could not continue the business. (*Honore* v. *Colmesnil,* 7 Dana, 291; *Honore* v. *Colmesnil,* 1 J. J. Marsh. 506; Hill on Trustees, 144.)

The sale of defendant's interest under execution, and the purchase thereof by plaintiff, were lawful and proper acts,

and vested in the plaintiff the title to the property sold. By the purchase of the Lane judgment the plaintiff became the judgment creditor of the defendant upon a matter not connected with the partnership; and he had the same right to enforce the claim that any other such creditor would have had. The right of a partner to sue his copartner during the existence of the partnership, upon matters not connected with the partnership business, has always been recognized. The right to sue includes the right to enter judgment, and enforce it. In other words, the right to sue is not an empty privilege. There is nothing in the partnership relation that on principle would prevent the enforcement of the judgment obtained against one partner by another, or that would limit it in any way; but, of course, the sale of the debtor's interest in the firm would dissolve the firm, whether the judgment creditor was a partner or not. So there is nothing in the trust relation which tends to prevent the trustee from enforcing any just claim he may have against the beneficiary. Where, in a case of a partnership, the relation is dissolved, and nothing remains to be done but the payment of the balance due the continuing partner, and the division of the remainder of the assets in his hands, or where, in case of trust, it is of no higher a nature than a mortgage of personal property, the right of the continuing partner in the one case, or the trustee in the other, to execute a judgment, is absolutely above question. (Parsons on Part. 270; *Wright* v. *Levy*, 12 Cal. 257.) And having the right to enforce the judgment, the right to purchase at the execution sale followed as a necessity.

By the Court, WALLACE, J.:

The plaintiff brought this action to recover of Dickinson three thousand and ninety dollars, with interest, etc. He alleges in his complaint that in the year 1860, and up to Jan-

uary 18th, 1861, he and the defendant were partners in San Francisco, doing business under the firm name of McKenzie & Co.; that about the last named day the partnership was dissolved, and that before the month of November next following all of the interest of the defendant in the property which had belonged to the partnership was sold by the Sheriff under an execution against the property of Dickinson, issued upon a judgment obtained against him in the District Court of the Fourth Judicial Court. The plaintiff further alleges that Dickinson at some time unknown to the plaintiff made and delivered in the firm name of McKenzie & Co. a promissory note to one Burns for one thousand six hundred dollars, with interest at two per cent per month—the note bore the date of January 1st, 1861, and ran for five months from date; that the note was not in fact given for any partnership purpose, but for the personal debt of Dickinson; that the plaintiff did not know of the existence of the note at the time the partnership was dissolved, nor at any time thereafter until demand was made upon him for its payment in December, 1861.

The complaint further alleges that a judgment was subsequently recovered against the firm upon this note, and that plaintiff was compelled to pay and did pay the same, with the accumulated interest, costs of action, etc., amounting to three thousand and ninety dollars.

To this complaint Dickinson filed an answer and cross-complaint, alleging that no dissolution of the partnership firm of McKenzie & Co. had ever taken place; that on January 19th, 1861, an account of partnership affairs was taken by the parties, by which it appeared that the firm then had in money and bills receivable some ten thousand dollars, and that the stock in trade, goods, etc., amounted to some five thousand dollars more; that it was then agreed that the plaintiff should collect the indebtedness due the firm as far as possible, and should retain for himself thereout four thou-

sand five hundred and seventy-seven dollars, and also one half of the amount, if any, collected above that sum, and should retain in his custody, but in trust for the defendant, the other half of the surplus collections; that the plaintiff was to hold the defendant's moiety of moneys collected as trustee, partner, and agent for the defendant, who at the time purposed to be shortly absent from the State, and who did immediately thereafter depart the State and did not return for some four months; that the stock in trade and goods on hand were also left with the plaintiff as a copartner, and to be used by the firm of McKenzie & Co. in the prosecution of its accustomed business. It was further averred by the defendant that shortly after his departure the plaintiff purchased a judgment for some two thousand two hundred dollars, which one Lane had recovered against the defendant in the year 1857, and which was in full force and effect against the property of the defendant; that the purchase was made for five hundred dollars, and the assignment of the judgment procured in the name of one Gordon, as assignee thereof, with the intent to conceal the fact that McKenzie was the real holder thereof; that McKenzie obtained his knowledge of the existence of said judgment only by means of the copartnership and fiduciary relations between himself and the defendant, and that when he purchased it he had in his hands sufficient copartnership property to have discharged and satisfied it in full; that in March, 1861, during the defendant's absence from the State, plaintiff caused an execution to be issued upon the Lane judgment, and caused himself to be served by the Sheriff with notice that all moneys, etc., in his hands and belonging to the defendant had been levied upon; that a Sheriff's sale was had under this judgment of all the interest of defendant in the firm, business, and property of McKenzie & Co., at which sale the plaintiff bid in his own name, and was the purchaser at two hundred dollars, the bid being credited by the Sheriff upon the judgment; that on the

return of the defendant to this State in May, 1861, plaintiff met him at the steamer and informed him that Lane had issued process upon the two thousand two hundred dollars judgment, garnished the plaintiff and sold out all of defendant's interest in the firm of McKenzie & Co., and that these proceedings had dissolved the firm. The answer further alleges that after this period the plaintiff still carried on profitably the business of the firm of McKenzie & Co., and with the moneys left with him by the defendant, upon his departure early in 1861, and with the property of defendant, which the plaintiff had purchased at the sale under the Lane judgment; that the profits made by the firm amount to some thirty thousand dollars; that certain real estate in the City of San Francisco had during this time been purchased by McKenzie with the partnership funds, and the title deeds taken in the name of McKenzie alone; and that, on the 1st day of January, 1863, McKenzie had retired from business and sold out the firm's stock in trade, goods on hand, etc., to one Bardwell, for three thousand dollars.

To the cross-complaint an answer was filed by McKenzie traversing many of its allegations, and setting up, among other defenses, that, at the time of the purchase of the Lane judgment, the plaintiff had not in his hands any money or property belonging to the firm of McKenzie & Co., or to the defendant. The plaintiff also pleads the Statute of Limitations in bar of the matters averred in the cross-complaint of the defendant, and avers that the several matters and things in the said cross-complaint set forth were discovered by and known to the defendant more than three years before the filing of the said cross-complaint.

By consent, the cause was subsequently referred to Hon. SAMUEL COWLES to hear the proof and report a judgment, who afterwards filed the following findings of fact and conclusions of law:

" First—That the plaintiff and the defendant became co-partners in the business of manufacturing bags early in the year 1857.

" Second—That said copartnership continued to the 19th day of January, 1861, at which time there was a settlement and accounting between the partners, and, by mutual consent, a dissolution of said copartnership.

" Third—That at the time of said dissolution said defendant received from the firm the sum of eight thousand four hundred and eighty-two dollars, and that plaintiff sold to him his interest in city slip lot number twenty, upon which the firm had their shop, and that said defendant agreed to sell to said plaintiff said lot, on or before June 1st, 1861, at the price of two thousand six hundred dollars.

" Fourth—That upon said settlement there was found due to the plaintiff, from said firm, the sum of four thousand five hundred and seventy-seven dollars.

" Fifth—That by the terms of said settlement the assets of said copartnership were left with the plaintiff to be converted into cash; and from the proceeds he was to pay himself said sum of four thousand five hundred and seventy-seven dollars.

" Sixth—That the defendant made mistakes in his own favor, in footing up the cash account, amounting in the aggregate to the sum of one thousand nine hundred and thirty-three dollars and twenty-five cents, which mistakes were not shown, and not embraced in the settlement of January 19th, 1861.

" Seventh—That plaintiff paid, on the order of defendant, to M. N. Cowan, the sum of two hundred dollars, and to the defendant himself the sum of one hundred dollars, after the settlement and dissolution.

" Eighth—That the total amount collected by the plaintiff from the notes and accounts left in his hands, upon the settlement and dissolution, was six thousand five hundred

and ninety dollars and seventeen cents, and that defendant
has received two hundred and twenty dollars and eight cents
in excess of the collections made by plaintiff since the dis-
solution.

"Ninth—That on the 11th day of March, 1861, the plain-
tiff purchased a judgment from one N. C. Lane against
defendant, bearing date June 3d, 1857, for the sum of two
thousand two hundred and seventy-eight dollars and fifty-
three cents, and drawing interest at the rate of five per cent
per month, paying therefor the sum of five hundred dollars,
and that said plaintiff caused said judgment to be assigned
to Joseph Gordon, who held the same in trust for plaintiff.

"Tenth—That at the time of the purchase of said judg-
ment the said plaintiff had no money in his hands belonging
either to the said defendant or to the late firm of McKenzie
& Co., and that said judgment was purchased by said plain-
tiff with his own money.

"Eleventh—That all of the interest of the defendant in
the assets of the late firm of McKenzie & Co. was sold under
an execution issued on the same judgment, on the 11th day
of June, 1861, and that said interest was bought in for the
benefit of the plaintiff, the amount bid therefor having been
credited on the said judgment.

"Twelfth—That on or about the 1st day of January, 1861,
the defendant made a note in the name of McKenzie & Co.
for one thousand six hundred dollars, with interest at the
rate of two per cent per month, payable five months after
date, to the order of one Julian W. Burns.

"Thirteenth—That said note was given for the individual
liability of the said defendant, and not for a liability of the
firm of McKenzie & Co., and that the money obtained from
said Burns never went into the business of McKenzie & Co.,
but was obtained and used for the benefit of the defendant.

"Fourteenth—That on the 9th day of March, 1864, said
Burns obtained a judgment against the plaintiff and defend-

ant for the sum of two thousand six hundred and sixty-six dollars, with interest at two per cent per month, and that the plaintiff, on the 24th day of August, 1864, was compelled to and did pay said judgment, the principal and interest due on said judgment at the time of the payment thereof amounting to the sum of ($3,090) three thousand and ninety dollars.

"And as a conclusion of law from the facts found, I find that the plaintiff is entitled to recover from the defendant the sum of three thousand and ninety dollars, with legal interest thereon from the 24th day of August, 1864, together with the costs of this action."

The defendant having excepted to the findings of fact in this case, and upon due notice having moved that findings be framed upon certain other issues in this case, and the counsel of the respective parties having been heard, after due consideration the undersigned, referee, finds the following additional facts, which are hereby made a part of the original findings so far as regards the conclusions of law arrived at in the case:

"Fifteenth—At the time of the dissolution of the partnership—January 19th, 1861—the parties had a settlement of their partnership affairs; the defendant claimed that there was due to him from the firm the sum of one thousand two hundred and fifty dollars, for money advanced by him in the purchase of city slip lot No. 20, owned by the firm; also the sum of three thousand and thirty-two dollars and thirty-five cents, being the cost of certain drills purchased by him on individual account, but which were afterwards used in the business of the firm; also the sum of four thousand two hundred dollars, for moneys advanced by him from time to time in the business of the firm; these sums, amounting to the sum of eight thousand four hundred and eighty-two dollars and thirty-five cents, were allowed by the plaintiff, and

the defendant was permitted to draw the amount from the funds belonging to the partnership; at the same time the defendant purchased from the plaintiff his interest in the firm lot for the sum of one thousand two hundred and fifty dollars, agreeing in writing to resell the whole lot to plaintiff at any time before the 1st day of June, 1861, for the sum of two thousand six hundred dollars; the sum of three thousand three hundred and twenty-seven dollars was then agreed upon as the amount which the partnership owed to the plaintiff; the assets of the firm were to be left with the plaintiff, who was authorized to retain the last named sum from them, and the balance was to be divided between them, and a memorandum in writing to this effect was given by the plaintiff to the defendant, but this memorandum on the following day was destroyed, and another similar in terms was substituted, except the amount was changed from three thousand three hundred and twenty-seven dollars to four thousand five hundred and seventy-seven dollars, to correct a mistake of one thousand two hundred and fifty dollars made at the time of the settlement in allowing the claim preferred by the defendant against the partnership for the last named sum, when the plaintiff had relinquished to the defendant his interest in the partnership lot; no inventory of the assets or property belonging to the firm was made at the time of the dissolution, nor were they appraised, nor was any valuation placed upon them.

" Sixteenth—The plaintiff collected all the solvent notes and accounts left in his hands belonging to the partnership, which collections amounted to the sum of six thousand two hundred and ninety dollars, and exchanged the engine and boiler for another; the interest of the defendant in the shop, sewing machines, stock, and fixtures were sold under the Lane judgment for the sum of two hundred and twenty-one dollars and twenty-five cents, and bid in and for the benefit of plaintiff.

" Seventeenth—Defendant went to New York immediately after the dissolution, and on his own private business, and returned to San Francisco early in May, 1861.

"Eighteenth—The defendant, while in the Eastern States, bought drills and sheetings to the amount of about eighteen thousand dollars, and also a quantity of coal oil, in the name of McKenzie & Co., but for his own account and use.

"Nineteenth—The plaintiff and defendant did not correspond with each other, but the defendant, while in New York, wrote one letter to plaintiff, in which he stated that he had bought certain bagging material, and thought of dipping into coal oil; also, that there was bagging material on two ships then on their way to San Francisco.

"Twentieth—The plaintiff did not acquire his knowledge of the Lane judgment by reason of any copartnership or fiduciary relation then or ever existing between himself and defendant.

"Twenty-first—At the time of the purchase of the Lane judgment the plaintiff had in his hands the property received by him at the time of the settlement and dissolution, except some of the notes and accounts which had been collected, and the engine and boiler, which had been exchanged for others.

"Twenty-second—The defendant had knowledge of all the facts alleged in his cross-complaint more than three years before the commencement of this action.

"Twenty-third—The defendant, on his return from New York, asked and obtained from plaintiff leave to examine the books in possession of the plaintiff, to ascertain the amount of money received from the assets of the firm of McKenzie & Co., and said books truly showed said amount, and the defendant never asked for, until the trial of this cause, any other or further accounting of the affairs of McKenzie & Co., or the matters of difference between himself and plaintiff."

Judgment being thereupon rendered for the plaintiff, Dickinson moved for a new trial, which being denied, he brings this appeal from the judgment and order.

The referee having found that the copartnership was dissolved by mutual consent on the 19th day of January, 1861, and the evidence being sufficient to sustain the finding in that respect, we will not disturb it here. From that point of time, therefore, the parties must be regarded as no longer sustaining toward each other the relation of copartners, and, upon this view, the cross-complaint filed by the defendant upon the return of the cause from this Court on the former appeal must fail, in so far as it seeks a dissolution of the copartnership and an account of its transactions.

It further appears by the findings (and, upon looking into the evidence, I think that none of them can now be disturbed), that at the time (March 11th, 1861) at which McKenzie purchased the Lane judgment he had no funds in hand belonging to the defendant, or to the late firm.

The cross-complaint of Dickinson, indeed, does not allege that he had such funds at that time, but only that he had " all the property hereinbefore mentioned," *i. e.*, notes, outstanding debts, stock in trade, and goods on hand. That he had no money, either belonging to Dickinson, individually, or to the late firm of McKenzie & Co., is rather probable, from the fact that Dickinson, when leaving for New York, had taken all the money of the late firm, leaving the plaintiff to make such collections as he might, and to pay himself thereout the sum of four thousand five hundred and seventy-seven dollars.

The referee finds that the total amount of these collections by the plaintiff was six thousand five hundred and ninety dollars and seventeen cents, and that while this would have entitled Dickinson to receive of McKenzie a little more than one thousand dollars, according to the terms of the memorandum of January 19th, the latter, in fact, had

already at that time received some two hundred dollars in excess of that sum; but by reason of the mistakes which Dickinson had made in his own favor, in footing up the cash account of the firm, this did not appear when the settlement of January 19th was made between McKenzie and himself.

The partnership having been dissolved on the 19th of January, 1861, Dickinson withdrawing for himself all the cash on hand—some eight thousand dollars—and leaving the late firm in arrears to McKenzie to an admitted amount of nearly five thousand dollars (but to an actual amount, it seems, of upwards of six thousand dollars), with authority to the latter to reimburse himself by the collection of debts due the late firm, and by the sale of its property in his hands, McKenzie purchased the judgment which Lane held against Dickinson, took the assignment in the name of one Gordon, levied an execution thereunder upon the interest of Dickinson in the assets of the late firm, and at the execution sale purchased them for himself, etc.

I know of no principle of equity which forbids one partner from purchasing with his own funds a judgment or other evidence of indebtedness, even against one who may be at the time his own copartner in business, or prohibiting him from enforcing the collection by a levy upon and sale of the interest of the other in the firm assets. The obligations of copartners *inter sese*, whatever may be their nature and extent, refer only to the conduct of the business in which the firm is engaged. The copartnership of McKenzie & Co. was engaged in the business of manufacturing and selling bags, and buying and selling bagging material in San Francisco. It was not engaged in purchasing judgments or other securities, and whatever transaction either partner might effect in that respect, by the use of his private means, would be for his own benefit, and not for the benefit of the copartnership.

This principle is well illustrated by the late case of *Wheeler* v. *Sage*, 1 Wallace, S. C. U. S. 518, in which it is held that such fiduciary relation as may be said to subsist between copartners, *as such*, is confined to and limited by the business of the copartnership, and that beyond and outside that limit there is no restraint upon the right of either partner to traffic. In that case the copartnership was engaged in a " general produce business," and in the course of that business became the mortgagee of valuable real estate, the title to which it was desirous of acquiring. One of the partners was intrusted with making that acquisition in behalf of the partnership. It turned out, ultimately, that he acquired it for himself, in connection with a third person, not a member of the copartnership, the amount of the mortgage debt, however, being paid to the firm. The property thus acquired having largely appreciated in value, and a bill having been brought by a member of the copartnership to obtain a share of the profits, the Court said:

" Each partner is the agent of his copartners in all transactions relating to the partnership business, and is forbidden to traffic therein for his own advantage, and, if he does, will be held accountable for all profits. But beyond the line of the trade or business in which the firm is engaged there is no restraint on his right to traffic. As one partner has no authority to bind the firm outside of their ordinary business, he cannot, of course, be held liable to account should he make a profitable adventure in a matter not legitimately connected with the business of the firm. The difficulty generally is to ascertain what acts are in the scope of the particular trade or business. But in this case there is no embarrassment whatever in the application of the principle. This was a partnership to do a general produce business. It contemplated no dealings in real estate, and each partner was at liberty to buy and sell real estate, and was under no

legal liability to account to his copartners. The debt due from Sweet (the mortgagor) belonged to the partnership, and not the premises mortgaged. To the extent of their debt the partners had an interest in the mortgaged property, and no further. They were interested to have the debt paid—not to procure title to the mortgaged property. It can readily be seen that it would be profitable to get a real estate worth fifty thousand dollars for thirty-four thousand dollars; but *how* an engagement to do a general produce business could embrace that speculation is not so apparent."

Dickinson, not having been a member of the firm of McKenzie & Co. since January 19th, 1861, is not entitled to an account for profits made since then; and there is no principle of equity upon which he can attack the sale to McKenzie, made under the Lane judgment.

The judgment and order appealed from must be affirmed; and it is so ordered.

Mr. Chief Justice Sprague did not participate in the foregoing decision.

[Two other cases, arising out of the same general transactions, and involving, to a greater or less extent, the same principles, were considered in connection with the foregoing action, and decided upon its authority. They were the cases of *Harvey Dickinson* v. *William McKenzie et als.* (No. 2,479), and *Harvey Dickinson* v. *Joseph Gordon et als.* (No. 2,573). In the former the judgment below in favor of defendants was affirmed. In the latter, after a judgment for defendants, the Court below granted a new trial in favor of plaintiff; and on appeal by defendants the order was reversed.—Reporter.]